## Case No. 1,687.

### BOTHWELL v. VESSEL–OWNERS' TOWING ASS'N.

[6 Chi. Leg. News, 256.]

District Court, N. D. Illinois. 1874.

TOWAGE—TUG REQUIRED TO EXERCISE CARE OVER TOW—TUG NOT COMMON CARRIER.

[1. A tug employed to tow a schooner from imminent danger of fire took her to an apparently safe berth, and there left her, with the acquiescence of her master, agreeing to return in case of danger, if not otherwise engaged. The fire spreading, the schooner was lost, although the tug returned, and used reasonable but unsuccessful effort to rescue her. Held, that the towage contract ended when the schooner was left at her berth.]

[2. The promise to return being without consideration, no liability attached to the tug for failing to make the rescue.]

[3. A towage contract does not render a tug liable as a common carrier.]

In admiralty. Case of Bothwell against the Vessel-Owners' Towing Association, brought to recover damages for the loss of the schooner Fontanelle, through the alleged negligence of the officers of the tug Black Ball No. 2 during the great conflagration of October, 1871.

The court remarked that on the night of October 8, 1871, the schooner Fontanelle

was lying at Hough's dock, on the South Side, near Van Buren street bridge. The tug Black Ball No. 2, owned by the Towing Association, was employed to tow her to a place of safety. The tug took hold and towed her to a point south of Polk street bridge, and left her nearly opposite the Salt Company's warehouse. The libel alleges that the undertaking was to tow the schooner to a place of safety, and that the officer in command of the schooner protested against being left at the point in question, but the evidence clearly establishes that he acquiesced in being left there, although some talk was had about the tug returning and towing her further if the place became dangerous. The tug was engaged during the balance of the night in transporting passengers across the river, and towing other vessels. After a time, seeing the fire approaching the Fontanelle, the captain of the tug attempted to rescue her, but just as he was getting his lines out, the salt warehouse burst into flames, which quickly extended across the river to the schooner, and the tug was obliged to leave her to her fate, and she was burned. The owner of the Fontanelle charges that the undertaking on the part of the tug, was to take her to a place of safety, and the result showing that the place in question not to have been safe, this libel was brought. [Libel dismissed.]

BLODGETT, District Judge, held that the tug did not become an insurer by the contract of towing, but was simply bound to perform its contract with ordinary skill and diligence, and as the captain and mate of the tug, and the mate, who was in command of the schooner, thought the berth above Polk street bridge safe from the approaching fire, therefore the contract of towage was executed. No action would, therefore, lie on the alleged promise to return, as that was a promise without consideration, and also was on the condition that the tug should not be otherwise employed. The evidence also showed that when it became apparent that the Fontanelle was in danger, the tug used every reasonable effort to rescue her; consequently the tug was not liable. In support of his views, Judge Blodgett cited [The Webb] 14 Wall. [81 U. S.] 414, in which the court says: "It must be conceded that an engagement to tow does not impose an obligation to insure or the liability of common carriers. The burden is always upon him who alleges the breach of such a contract to show either that there has been no attempt at performance, or that there has been negligence or unskillfulness to his injury in the performance. * * * The contract requires no more than that he who undertakes to tow shall carry out his undertaking with that degree of caution and skill which prudent navigators usually employ in similar services." Also, Caton v. Rumney, 13 Wend. 387; Pennsylvania D. & M. S. Nav. Co. v.

Dandridge, 8 Gill. & J. 249; Wells v. Steam Nav. Co., 2 Comst. [N. Y.] 204, where it is held that "whenever steamboats are employed in towing they are bound to no more than ordinary care and skill in management; they are not quo ad hoc common carriers, and the law of common carriers is not applicable to them." The libel was then dismissed at the cost of the libelant.